UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN VICTOR,

        Plaintiff,                  CASE NUMBER: 10-14383
                                              HONORABLE VICTORIA A. ROBERTS

v.

JEFFREY WEBER, individually,
MICHAEL OLCESE, individually,
LAW FIRM OF WEBER & OLCESE, PLC.,
and ROBERT REZNICK,

        Defendants.
_____/

**ORDER GRANTING DEFENDANTS WEBER & OLCESE, P.L.C.,
JEFFREY WEBER, AND MICHAEL OLCESE'S
MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Before the Court is Weber & Olcese, P.L.C. ("W&O"), Jeffrey Weber, and Michael Olcese's Motion for Summary Judgment.  (Doc. # 21).

The Court **GRANTS** the motion.  Robert Reznick is the only remaining Defendant.

**II.   BACKGROUND**

This is one of several cases filed by attorney James Shaw against Defendants Weber, Olcese, W&O, and Reznick  The allegations, including constitutional violations, are materially the same in all cases.

Defendants Weber and Olcese are the principals of the W&O law firm located in Troy, Michigan.  W&O provides debt-collection services to its clients.  Under MCR

1

3.106, a court may appoint a court officer to seize property upon the issuance of an order to seize the debtor's property in satisfaction of a judgment. W&O often utilizes Reznick and his company, Due Process of Michigan, to seize property. Reznick is a deputy sheriff and approved court officer for certain district and circuit courts in Michigan.

Chase Bank USA, N.A., obtained a $28,808.74 default judgment in the Oakland County Circuit Court against Plaintiff Brian Victor while represented by the W&O firm. On July 27, 2007, the court issued an order to seize property; W&O assigned Reznick to serve the order and collect the debt. Reznick served the order on October 30, 2007 at Plaintiff's home. Victor claims "[w]hen [he] opened the door, Reznick quickly flashed a badge at him and, accompanied by several of his henchmen, entered forcibly into [his] home by pushing his way into the home." (Doc. # 1, Complaint at ¶ 20). The Complaint also alleges Reznick refused to leave, warned Victor he would be arrested if he did not comply with his demands for cash in satisfaction of the judgment, and caused Victor to become "extremely fearful." (*Id.* at ¶s 21-25).

Victor contends Defendants were aware of Reznick's abusive debt-collecting tactics when they hired him. Despite this, they "insisted that no person other than Mr. Reznick be used to execute Orders to Seize Property obtained by it against judgment debtors, threatening its employees with severe repercussions if any Court officer other than Mr. Reznick was sued to execute its Orders to Seize Property." (Complaint at ¶ 30). Victor says Defendants hired Reznick to execute seizure orders even though some courts prohibited him from doing so, circumventing the courts' orders. (*Id.* at ¶ 31).

This 42 U.S.C. § 1983 action alleges Defendants, acting under color of state law,

conspired to (and did) engage in "terroristic and abusive [debt-collecting] practices," in violation of Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution. (Complaint at ¶s 3, 39, 40, 41). Plaintiff's Complaint also alleges various state law violations; however, the parties stipulated to their dismissal. (Doc. # 19). The Order Dismissing Plaintiff's State Law Claims says it dismisses Counts II through VIII of the Complaint; however, there is a Count IX alleging a state law claim of extortion and threats. That Count should have been, and is, dismissed as well.

### III. ARGUMENTS

#### A. Defendants

Defendants say there is no legal basis to hold them liable for the actions of Reznick because neither Reznick nor the individuals who carry out seizure orders for him have an employment relationship with W&O. They say Reznick's authority to execute judgments "comes from the court signing the order authorizing the execution and Michigan statutes and court rule, not W&O." (Doc. # 21; Brief in Support of Defendant's Motion at 4). "The relationship between W&O and Reznick is simply an arms-length transaction," they allege. Further, Defendants say there is no support for Victor's conspiracy charge.

Defendants say even if the Court finds that W&O conspired with Reznick, Victor cannot show that Reznick deprived him of a constitutional right. They say Victor's Fourth Amendment claim fails because there was a valid court order entitling Reznick to seize Victor's property such that the search and/or seizure was not "unreasonable." They say Victor's Fourteenth Amendment claim fails because Reznick did not use physical force against Victor and thus his behavior does not "shock the conscience," as

3

is required to state a claim for a violation of substantive due process.

Defendants urge the Court to follow the holdings of five opinions in cases from this District filed by Shaw against them. In each case, Shaw alleges the same basic facts and theory of liability as he does here; in each the district court granted summary judgment to Defendants. *See Hoover v. Weber*, No. 10-11127, 2011 WL 4599609 (E.D. Mich. Sept. 30, 2011) (Rosen, J.); *Cagle v. Weber*, No. 10-13450, 2011 WL 3849421 (E.D. Mich. Aug. 26, 2011) (O'Meara, J.); *Moore v. Weber*, No. 10-13037, 2011 WL 3607037 (E.D. Mich. Aug. 16, 2011) (Cohn, J.); *Rozewski v. Weber*, No. 10-13035, 2011 WL 3329777 (E.D. Mich. Aug. 3, 2011) (Hood, J.); *Bairactaris v. Weber*, No. 10-10983, 2010 WL 4623875 (E.D. Mich. Nov. 4, 2010) (O'Meara, J.).

### B. Plaintiff

Victor says Defendants were aware of numerous complaints about Reznick's debt-collecting practices. Victor alleges, in furtherance of Defendants' conspiracy to abuse debtors, W&O and its principals "maintained a policy to only use Mr. Reznick and no other court officer," (Doc. # 24-1; Brief (Br.) in Support of Plaintiff's (Pl.'s) Response at 12), and to conceal complaints against him. (*Id.* at 13). He claims Defendants directed and controlled Reznick's conduct while executing seizure orders by telling him what property to seize, and instructed him to do his job despite hundreds of complaints. He says the Defendants' actions violated his Fourth Amendment right to be free from unreasonable searches and seizures because Reznick entered his home without consent and refused to leave unless paid in cash.

Victor argues there is sufficient evidence that Defendants violated his Fourteenth Amendment substantive due process rights for this claim to reach a jury. He says the

...

absence of excessive force or physical brutality does not doom the claim because "[t]here is an entire universe of cases not involving conscience shocking physical abuse by police, where 'fundamental rights' are protected against government action that is 'irrational, 'arbitrary' or 'arbitrary and capricious.'" (Br. in Support of Pl.'s Response at 32). He says Defendants acted arbitrarily and capriciously in interfering with his "fundamental right to privacy of his home [and] his property interests in the money extorted from him under the threat of arrest and imprisonment." (*Id.* at 35).

Lastly, Victor urges this Court to reject *Bairactaris* as factually inaccurate and legally flawed. He does not address the other four opinions from this District.

## IV.   ANALYSIS

### A.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "As the moving party, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Moses v. Providence Hosp. and Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009).

"Plaintiff, as the non-moving party, must then present sufficient evidence from which a jury could reasonably find for [it]." *Id.* To do this, Plaintiff must establish more than some "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 586. It must show that there is a *genuine* issue for trial. *Id.* at 587. Plaintiff must establish a

genuine issue with specific facts and affirmative evidence; it "may not rest upon mere allegation or denials of [its] pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 257 (1986). And, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden v. City of Memphis Police Dept.*, 67 Fed. Appx. 893, 895 (6th Cir. June 17, 2003). "The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion." *Golliday v. Chase Home Fin., LLC*, 761 F.Supp.2d 629, 634 (W.D. Mich. 2011) (citing *Matsushita*, 475 U.S. at 587 and *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008)).

    **B.    Defendants are not liable for Reznick's alleged unlawful conduct under any theory of liability.**

Section 1983 does not confer substantive rights; it provides a way to vindicate rights conferred by the Constitution or laws of the United States. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). To prevail on his claim, Victor must show that "a person acting under color of state law deprived [him] of a [federal right]." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (citation and quotation marks omitted).

The Court agrees with the reasoning and holdings of *Hoover*, *Cagle*, *Moore*, *Rozewski*, and *Bairactaris* that W&O, Weber, and Olcese cannot be held liable for Reznick's conduct in executing a seizure order even if that conduct is unconstitutional and worthy of vindication under § 1983. Most recently, in *Hoover*, Judge Rosen held Defendants W&O, Weber, and Olcese were not liable for Reznick's conduct in executing a seizure order under any theory of liability: supervisory liability, 2011 WL

4599609, at *3-*4; *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) liability, *id.* at *4-*6; or coconspirator liability, *id.* at *6-*7. The same is true here.

### 1. Vicarious Liability

#### a. Supervisory Liability

Even assuming Reznick acted "under color of state law" as required by § 1983, the *Hoover* court noted, there could be no liability predicated upon the individual Defendants' supervisory authority over Reznick, because there was no evidence that W&O or its principals interacted with Reznick in any way as he carried out the order to seize the plaintiff's property. *Id.* at *4; *see also Rozewski*, 2011 WL 3329777, at * 5 ("[T]he individual defendants, Weber and Olcese, [ ] cannot be held liable under a supervisory liability theory in a § 1983 action because no such action is available for failure to prevent misconduct, absent a showing of direct responsibility by the supervisor for the improper action." (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)).

This Court agrees. First, Defendants contend (and Victor concedes) that they do not supervise Reznick; he is not employed by them; they do not have a contractual relationship with him. Supervisory liability, as the name suggests, anticipates an employment relationship, with the supervisor having control over the conduct of the subordinate. While Victor claims employees of the W&O firm directed Reznick's debt-collection activities, the facts show only that an employee of the W&O firm, Karla Smith, sometimes told Reznick what property to seize and twice accompanied Reznick to debtors' homes. (*See* Br. in Support of Pl.'s Response at 16). This is different than instructing Renick to violate debtors' constitutional rights. Moreover, there is no claim

that Webber, Olcese, Smith, or any other employee of W&O were present, or involved in Reznick's debt-collection activities, at Victor's home.

Furthermore, even if Victor could show Reznick had an employment or independent contract relationship with Defendants, "§ 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "There must be a showing that the supervisor encouraged *the specific incident of misconduct* or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (emphasis added).  Victor has not shown that Webber and Olcese encouraged, participated in, implicitly authorized, approved, or knowingly acquiesced in Reznick's conduct when Reznick entered Victor's home without consent, refused to leave, and used the threat of imprisonment to secure payment.  As explained below, at most, Victor can show that Webber and Olcese were aware that other debtors had lodged generalized complaints of boorish behavior and language against Reznick.  These complaints cannot form the basis for the individual Defendants' liability for Reznick's actions with respect to Victor.

            **b.**      **Policy-Based Liability**

Second, the *Hoover* court rejected a *Monell* policy-based theory of liability with respect to W&O.  In order to establish this type of liability under § 1983, Victor must show that the Defendant firm: (1) was acting under color of state law, and (2) had in place an official policy that was the direct cause of, or moving force behind, the constitutional violation.  *See Monell*, 436 U.S. at 694 (when execution of a government's

policy or custom inflicts injury, the government as an entity is responsible under § 1983); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (acknowledging that government liability for an official policy or custom under *Monell* extends to private corporations); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (defendant must be acting under color of state law to be held liable for a constitutional deprivation under § 1983).

### i. State Action

In *Hoover*, because the plaintiff did not identify "any authority for the proposition that the W&O firm acted under color of state law or satisfied any of the tests for state action by retaining court officer Reznick to execute an order to seize property that the firm had obtained on behalf of a private client," W&O could not be held vicariously liable for Reznick's conduct under § 1983. 2011 WL 4599609, at *6; *see also Moore*, 2011 WL 360737, at *4 ("Plaintiff presents no legal authority for finding that the law firm defendants are state actors under § 1983."). The *Hoover* court noted, "a private law firm such as W & O is not transformed into a 'state actor' for purposes of *Monell*-based liability merely by virtue of its use of a court officer to collect a judgment obtained by the firm on behalf of a private client." 2011 WL 4599609, at *5; *see also Moore*, 2011 WL 3607037, at *3-*4 (agreeing with the holding of *Rozewski* that W&O did not have a sufficiently close relationship – through state regulation or contract – with the State of Michigan for action taken by it to be attributed to the state); *Rozewski*, 2011 WL 3329777, at *4 (same).

Both the *Hoover* and *Moore* courts adopted Judge Hood's reasoning in *Rozewski*:

9

> The Weber and Olcese Defendants were acting as counsel on behalf of a certain client when a Default Judgment and the Order to Seize Property were obtained with the state court. There are no allegations by Rozewski that the action by the Weber and Olcese Defendants in obtaining such a judgment and order constitute a "state action." Rozewski claims that the action of *obtaining Reznick's services to enforce* the Order to Seize Property constitutes a state action. However, Rozewski has not submitted any legal authority that a law firm's action to obtain services to enforce an Order to Seize Property constitutes a "state action." Michigan law allows a party to take steps to satisfy a judgment. No state or municipality decision is involved in obtaining such services, other than the applicable statute. There is no evidence apart from the statutory fees for the services charged by Reznick, the Weber and Olcese Defendants have any other employment or contractual relationship with Reznick. The Weber and Olcese Defendants cannot be held liable under a vicarious liability or *respondeat superior* theory for any actions by Reznick since no state action existed when the Weber and Olcese Defendants obtained the services of Reznick to satisfy the judgment. A § 1983 action cannot lie against a municipality or, in this case, the law firm or its principals, under the theory of *respondeat superior* since the Weber and Olcese Defendants were not executing a policy or custom adopted by a state or municipality. *Monell,* 436 U.S. at 695. The Weber and Olcese Defendants' actions of obtaining Reznick's services cannot be connected to any state or municipal policy or custom.

2011 WL 3329777, at *4 (emphasis in original).

### ii. Official Policy or Custom

The *Hoover* court said even if the plaintiff could show state action on the part of the W&O firm, "the record fails to establish any nexus between an alleged violation of Plaintiff's constitutional rights and a policy adopted by the W&O firm, such that this policy could be said to be the 'moving force' behind any such violation." 2011 WL 4599609, at *5. Judge O'Meara drew the same conclusion in *Cagle* and *Bairactaris*. In both cases, he held the plaintiff failed to present evidence of a policy promulgated by W&O that prompted Reznick's alleged constitutional violations. *Cagle*, 2011 WL

10

3849421, at *2; *Bairactaris*, 2010 WL 4623875, at *2.

The Court agrees. Because Victor fails to present evidence of state action and a W&O policy that drove Reznick to allegedly violate his constitutional rights, Victor has no basis for a § 1983 action against W&O for vicarious liability.

### 2. Coconspirator Liability

The Court agrees with the *Hoover*, *Cagle, Moore*, and *Bairactaris* courts that Victor does not establish a genuine issue for trial regarding an agreement between Defendants and Reznick to violate his constitutional rights.

The Sixth Circuit set forth the standard for proving a civil conspiracy in *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985):

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

There is no evidence of a single plan or conspiratorial objective among Defendants to violate Victor's constitutional rights while executing the seizure order. In *Bairactaris*, Judge O'Meara said: "In this case Plaintiff has failed to show any collusion or communication between W & O and Reznick to violate Plaintiff's rights. Instead, Plaintiff's brief is rife with hyperbole, claiming that the law firm is aware that Reznick uses 'terroristic methods' during the executions." 2010 WL 4623875, at *2; *see also Hoover*, 2011 WL 4599609, at *7; *Cagle*, 2011 WL 3849421, at *2; *Moore*, 2011 WL 36077037, at *4.

Victor presents evidence only that Defendants were aware of complaints from

other individuals that Reznick used force and threats to obtain money from them. But knowledge alone is inadequate to prove conspiracy; there must be some evidence that Defendants intended themselves to violate the law. *Bairactaris*, 2010 WL 4623875, at *2 ("'Knowledge alone of tortious conduct is insufficient to prove a conspiracy agreement. Knowledge of the planned tort must be combined with intent to aid in its commission. An entity that engages in legitimate business with a party that is acting tortiously cannot be deemed a co-conspirator absent clear evidence of an agreement to join in the tortious conduct."); *Cagle*, 2011 WL 3849421, at *2 ("Knowledge of illegal conduct, association with conspirators, or passive acquiescence in unlawful activity is insufficient, as a matter of law, to establish the agreement necessary to sustain a conspiracy claim."); *Moore*, 2011 WL 3607037, at *4 ("At best, plaintiff says that W & O, Weber, and Olcese were aware of complaints about Reznick's company related to its collection activities....[K]nowledge alone is not sufficient to show a conspiracy under § 1983.").

Moreover, Defendants' notice of complaints of this nature *from other persons*, does not establish they had notice that Reznick planned to enter *Victor's home* without consent, refuse to leave, and threaten *Victor* with arrest and imprisonment. As the *Hoover* court aptly observed:

> [T]he materials produced by Plaintiff in this case are riddled with evidentiary defects: many of Plaintiff's exhibits reference irrelevant, far-removed time periods or lack any specific mention of the parties to this litigation, and other materials include assertions that would not be admissible in evidence at trial or otherwise run afoul of the rules governing the Court's consideration of exhibits in deciding a summary judgment motion. Nonetheless, the most that could possibly be gleaned from this record is that various judgment debtors had complained in the past of Defendant Reznick's conduct in executing orders to seize property, and

> that the W&O firm was aware of these complaints but nonetheless continued to use Reznick's services. As observed in both *Bairactaris*, 201 WL 4623875, at *2, and *Moore*, 2011 WL 3607037, at *4, such knowledge alone is not sufficient to establish that the W&O firm entered into a single, shared plan with Defendant Reznick to violate Plaintiff's constitutional rights.

2011 WL 4599609, at *7.

The complaints Victor says were made by others are irrelevant to the existence of a conspiracy against him. Moreover, they were largely confined to Reznick's use of coarse language, generalized threats, and intimidation to collect money. A conspiracy to use crude language, threats, and intimidation is not the same as a conspiracy to violate Victor's federal constitutional rights. *Hoover* is again instructive:

> As catalogued in Plaintiff's response brief, the complaints about Defendant Reznick's conduct concerned his alleged use of threats, intimidation, and foul or offensive language. The principal constitutional violation alleged by Plaintiff, in contrast, is Defendant Reznick's unlawful entry into his home without his consent, in violation of the Fourth Amendment. Thus, even assuming that Defendant Reznick's past practice in executing orders to seize property involved conduct proscribed under some body of law, and even assuming that this conduct was attributable to a policy of the W&O firm, any such policy could not be deemed the "moving force" behind the specific form of illegality claimed here – namely, Defendant Reznick's alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiff's evidence establishes, at best, that W&O looked the other way or condoned Defendant Reznick's inappropriate (and perhaps unlawful) tactics, but this record cannot forge the further (and necessary) link between a W&O policy and the particular sort of illegality that could support a claim under § 1983 – namely, conduct in violation of a federal constitutional right.

2011 WL 4599690, at *6.

Thus, what Victor identifies as evidence that Defendants "ratified, endorsed, participated [in,] and furthered the conspiracy" (referred to as "sub A through H") (*see* Br. in Support of Pl.'s Response at 12-16, 19), is largely irrelevant. Even if Defendants

13

did all of the things Victor alleges, he does not provide evidence that they conspired to violate his federal constitutional rights. "[T]he 'knowledge' cited by [Victor] is far too vague and general to establish the W&O firm's awareness that Reznick routinely (or even occasionally) violated the federal constitutional rights of debtors as he executed orders to seize their property." *Hoover*, 2011 WL 4599690 at *7 n. 15. At best, there is simply evidence that Defendants were aware that Reznick was sometimes boorish and rude to judgment debtors. *See id.* Victor's conspiracy claim fails.

**V.    CONCLUSION**

The Court need not address the parties' substantive arguments regarding the merits of Victor's Fourth and Fourteenth Amendment claims. Even assuming Reznick's alleged conduct violated these rights, Defendants are not liable for the violation under any theory of liability.

The Court **GRANTS** the motion for summary judgment.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 2, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 2, 2011.

S/Linda Vertriest
Deputy Clerk

14